IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD SCHALLER,
      Plaintiff,

vs.                                    Case No.: 3:10cv473/MCR/EMT

UNITED STATES OF AMERICA, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Plaintiff's second amended complaint filed under 28 U.S.C.

§ 1331 and <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)[1]

(Doc. 11).  The filing fee has been paid.

I.      BACKGROUND

Plaintiff was a federal inmate housed at the Pensacola Community Service Center, a private

facility operated by Keeton Corrections, Inc. ("Keeton"), under contract with the federal Bureau of

Prisons ("BOP") at the time he filed this lawsuit (*see* Doc. 11 at 2, 5–6).  He has since been released

(*see* Doc. 5).  Plaintiff names four Defendants in this action:  the United States of America;

Raymond E. Holt, Regional Director, Southeast Region of the BOP; Kimberly Keeton Spence,

President and CEO of Keeton; and Connie Davis, Quality Assurance Manager at Keeton (Doc. 11

at 1–3).

Plaintiff states he was housed at Keeton from July 20, 2010, through November 18, 2010

(121 days) (Doc. 11 at 5).  He contends Defendants exposed him to unhealthy conditions of

confinement by failing to enforce Keeton's non-smoking policy, which prohibits tobacco smoking

within ten (10) feet of the building (*id.* at 7– 8, 12).  He asserts Keeton employees, inmates, and

---

[1] <u>Bivens</u> recognized a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States.  403 U.S. at 397.

visitors smoked outside near the two entrances to the building, which exposed anyone entering or leaving the building to tobacco smoke and caused smoke to enter the building (*id.*). Plaintiff states he did not observe Keeton staff comply with or enforce the non-smoking policy or clean the building's air handling system (*id.* at 8). Plaintiff also states Defendants permitted smoking in all outdoor areas, including the areas where physical fitness equipment was located (*id.*).

Plaintiff additionally claims that Defendants exposed him to unsafe conditions of confinement by failing to provide a ladder for mounting and dismounting his upper bunk bed (Doc. 11 at 8–9, 14). He also states the electrical outlets lacked "activating circuit protection" (*id.* at 9, 14). Plaintiff additionally claims that Defendants ordered overcrowding at Keeton by housing thirty-two (32) inmates in a 1,200 square foot dormitory, with 32 beds and 32 lockers, which was unsanitary, unsafe, and inhumane (*id.* at 7, 13).

Additionally, Plaintiff contends Defendants exposed him to "dehumanizing" conditions by ordering him into involuntary servitude under threat of punishment and conducting "shakedowns" (Doc. 11 at 9–10, 13). He states that from August 23, 2010, through November 18, 2010, Defendants assigned him to maintain the staff restrooms without compensating him or providing training or "hazard protection" (*id.* at 10, 13). He additionally states Defendant Davis conducted a "shakedown" on September 17, 2010, during which Plaintiff was ordered to perform service and maintenance activities at the building (*id.* at 9–10, 13–14). Plaintiff states when he questioned Defendant Davis's order, she threatened him (*id.* at 9). He states Davis's subordinate then "wrote [him] up" for refusing to comply with Davis's order (*id.*). Plaintiff states that one month later, on October 20, 2010, an employee of Keeton (who is not named as a Defendant) ordered him and other inmates to perform maintenance activities at the building, pursuant to the order of a BOP official (*id.* at 9–10).

As another example of "dehumanizing" conditions, Plaintiff states that Defendants routinely ordered female staff members to inspect the male dormitory (even when male staff members were also on duty), despite the lack of a door separating the dormitory area from the male restroom and shower area and the lack of doors on the toilets and showers (Doc. 11 at 10–11). As a result,

Plaintiff was issued a disciplinary report on September 23, 2010, by a female officer for not having his pants on in the dormitory (*id.* at 11).

Plaintiff also complains that Defendants failed to provide fresh food or warm meals (Doc. 11 at 11, 14).  He states breakfast and lunch meals were stored in a refrigerator overnight, and dinner meals were stored at the officers' station for thirty (30) minutes prior to serving (*id.* at 11).

Plaintiff claims that the above-described conduct violated his Eighth and Thirteenth Amendment rights (Doc. 11 at 12–16).  He also claims he had no administrative remedy, since Defendants "mocked and suppressed" inmate complaints and failed to provide a "viable" complaint system (*id.* at 6, 15).  He states he attempted to request an administrative remedy by submitting a written request to Defendant Holt, but Holt did not respond to the request (*id.* at 6).

As relief, Plaintiff seeks monetary damages in the amount of $900,000.00 from each Defendant for "damage" caused by his exposure to tobacco smoke (*id.* at 15).  He also seeks monetary damages in the amount of $3,000,000.00 from each Defendant for mental anguish caused by Defendants' damaging his health and violating his constitutional rights (*id.*).

II.     ANALYSIS

Because Plaintiff was a prisoner seeking redress from a governmental entity or officer or employee of a governmental entity at the time he initiated this action, the court may dismiss the case if satisfied that the action is "(1) frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A complaint is frivolous "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  However, such acceptance

should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the second amended complaint, the undersigned concludes Plaintiff's claims should be dismissed.

Initially, as Plaintiff was twice previously advised, he may not recover monetary damages for his claims against the United States, its agencies, or employees acting in their official capacities. It is well established that no suit may be brought against the United States unless the United States waives its sovereign immunity and consents to be sued. The United States has not waived sovereign immunity in Bivens actions. *See* Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 688–89, 69 S. Ct. 1457, 1461, 93 L. Ed. 2d 1628 (1949); *see also* Garcia v. United States, 666 F.2d 960, 966 (5th Cir. 1982). Therefore, Plaintiff's claims for damages against the United States and

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

Defendants Holt, Spence, and Davis in their official capacities should be dismissed, pursuant to 28 U.S.C. § 1915A(b)(2).

Additionally, Plaintiff's Thirteenth Amendment claim against Defendants should be dismissed as frivolous. *See* United States v. Kozminski, 487 U.S. 931, 943–44, 108 S. Ct. 2751, 2760, 101 L. Ed. 2d 788 (1988) (observing that requiring inmates to work without pay does not violate the Thirteenth Amendment's prohibition against involuntary servitude); Omasta v Wainwright, 696 F.2d 1304, 1305 (11th Cir. 1983).

With regard to Plaintiff's Eighth Amendment claims, despite the court's previously advising him of the legal standard applicable to his Eighth Amendment claims and providing him an opportunity to amend his complaint, Plaintiff's allegations still fail to state a claim (*see* Doc. 9). The Eighth Amendment "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir.1999) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1988)). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" Chandler v. Crosby, 379 F.3d 1278, 1288–89 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)). Prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain. Chandler, 379 F.3d at 1288–89; Hope v. Pelzer, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514, 153 L. Ed. 2d 666 (2002); Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003); Campbell, 169 F.3d at 1362. To establish "unnecessary and wanton infliction of pain," Plaintiff is required to show "that officials acted with specific intent." Campbell, 169 F.3d at 1362.

To state an Eighth Amendment violation with respect to the conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. Chandler, 379 F.3d at 1289–90; Farrow, 320 F.3d at 1243. Under the objective component, a prisoner must prove that the condition of which he complains is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). Specifically, a prisoner must prove the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d

at 1289–90; Farrow, 320 F.3d at 1243; Rhodes, 452 U.S. at 347. "The challenged prison condition must be 'extreme'" and must pose "an unreasonable risk of serious damage to his future health or safety." Chandler, 379 F.3d at 1289–90 (quoting Hudson, 503 U.S. at 9) (other citation omitted).

Under the subjective component, the prisoner must prove that the prison official acted with "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 837,114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994) (stating that an individual may be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); Hudson, 503 U.S. at 8; Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). To prove deliberate indifference, the prisoner must show that the defendant prison official "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition in issue. Chandler, 379 F.3d at 1289–90 (quoting Hudson, 503 U.S. at 8). Negligence or even gross negligence does not satisfy this standard. Id.; Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir.1996).

In the instant case, Plaintiff's allegations concerning the absence of a ladder to his upper bunk, allegedly unsafe electrical outlets, overcrowding, unfresh and cold meals, lack of privacy in the restrooms, and forced maintenance of the facility, fail to satisfy the objective component of the Eighth Amendment standard. None of these allegations suggest conditions that were extreme or posed an unreasonable risk of serious damage to his health or safety. Therefore, these claims are subject to dismissal.

With regard to Plaintiff's remaining claim, that is, his alleged exposure to tobacco smoke, he has failed to state a basis for holding Defendants Holt, Spence, and Davis liable for his alleged exposure. As Plaintiff was previously advised (see Doc. 9), supervisory officials are not liable under Bivens for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Id. (citation

omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne v. Jarvis, 197 F.3d 1098, 1106 (11th Cir. 1999); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff has failed to allege facts showing that any individual Defendant was aware of the lack of enforcement of the smoking policy, or that any Defendant was subjectively aware that the environment at Keeton posed a substantial risk of serious harm to Plaintiff's health. Therefore, Plaintiff's claim regarding his exposure to tobacco smoke should be dismissed.

Moreover, it is clear from the face of the complaint that Plaintiff failed to administratively exhaust his claims prior to filing this lawsuit. As Plaintiff was previously advised (*see* Doc. 9), Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104–134, §§ 801–810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has consistently enforced the PLRA's mandatory exhaustion requirement, holding that the requirement applies to all federal claims brought by any inmate. *See* Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 520, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); Booth v. Churner, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Courts do not have discretion to waive the exhaustion requirement, even if it can be shown that the grievance process is futile or inadequate. Woodford, 126 S. Ct. at 2382; Alexander v. Hawk, 159 F.3d 1321, 1325–26 (11th Cir. 1998). Nor may courts inquire as to whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524. In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Woodford, 548 U.S. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process prior to initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam ); *see also* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). The Supreme Court has made it clear, however, that the "failure to exhaust is an affirmative defense under the PLRA, and . . . [that] inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Nevertheless, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. *Id.* at 215–16; *see also* Clark v. Georgia Bd. of Pardons & Paroles, 915 F.2d 636, 640–41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees

that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies").

The BOP provides a two level administrative grievance procedure for complaints by inmates in community corrections centers ("CCC's") like Keeton. *See* 28 C.F.R. §§ 542.13(b), 542.14(d); *see also* U.S. Department of Justice, Federal Bureau of Prisons, Program Statement No. P1330.16, pp. 2–12 (2007). Initially, an inmate must seek resolution of issues by submitting a written request for administrative remedy to the Regional Director or the Central Office. *See* 28 C.F.R. § 542.13(b); Program Statement No. P1330.16, pp. 2–12. If an inmate submits a request to the Regional Director and does not receive a response within thirty (30) calendar days, he may proceed to the next level of the administrative remedy process, which is an appeal to the General Counsel for the BOP. *See* 28 C.F.R. §§ 542.15(a), 542.18; *see also* BOP Program Statement No. P1330.16, pp. 2–12. The General Counsel has forty (40) days to respond. *See* 28 C.F.R. § 542.18; *see also* BOP Program Statement No. P1330.16, pp. 2–12. Each of these steps is generally required to satisfy the exhaustion prerequisite.

In the instant case, Plaintiff's sworn assertions in his complaint demonstrate that he did not exhaust his claims. Plaintiff states Defendant Davis advised him to submit any grievances to the BOP; so he submitted an administrative remedy request to Defendant Holt, the Regional Director, on October 25, 2010 (Doc. 11 at 6). According to BOP rules, Holt had thirty days (or until November 24, 2010) to respond. *See* 28 C.F.R. § 542.15(a). Plaintiff states Holt did not respond to his request (Doc. 11 at 6); however, the court notes that Plaintiff filed the instant lawsuit on November 17, 2010, before Holt's response time expired (*see* Doc. 1). Therefore, the allegations in the complaint, taken as true, demonstrate that Plaintiff failed to exhaust his BOP remedies prior to filing this lawsuit. Moreover, as discussed *supra*, courts do not have discretion to waive the exhaustion requirement, even if it can be shown that the grievance process is futile or inadequate. Woodford, 126 S. Ct. at 2382; Alexander, 159 F.3d at 1325–26. Nor may courts inquire as to whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524. Therefore, even if Plaintiff stated a constitutional claim, it would be subject to dismissal (albeit, without prejudice) for failure to exhaust.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's claims against the United States and Defendants Holt, Spence, and Davis in their official capacities be **DISMISSED with prejudice** for seeking monetary relief against Defendants who are immune from such relief." 28 U.S.C. § 1915A(b)(2).

2.      That Plaintiff's Thirteenth Amendment claims against Defendants Holt, Spence, and Davis in their individual capacities be **DISMISSED with prejudice** as frivolous, pursuant to 28 U.S.C. § 1915A(b)(1).

3.      That Plaintiff's Eighth Amendment claims against Defendants Holt, Spence, and Davis in their individual capacities be:

a.      **DISMISSED with prejudice** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1), **or**

b.      **DISMISSED without prejudice** for failure to exhaust administrative remedies, pursuant to 28 U.S.C. § 1915A(b)(1).

4.      That the clerk be directed to close this case.

At Pensacola, Florida, this <u>21</u><sup>st</sup> day of March 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**